# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0351V

| | |
|---|---|
| BRANDON POZIL, | Chief Special Master Corcoran |
| Petitioner, | Filed: August 2, 2023 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Nancy Routh Meyers, Turning Point Litigation, Greensboro, NC, for Petitioner.*

*Emily H. Manoso, U.S. Department of Justice, Washington, DC, for Respondent.*

### DECISION AWARDING DAMAGES[1]

On January 8, 2021, Brandon Pozil filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that he suffered a syncopal episode resulting in severe facial trauma after receiving the tetanus, diphtheria, acellular pertussis ("Tdap") vaccine on September 8, 2018. Petition at 1, ¶¶ 2-3, 12. Respondent conceded entitlement, but the parties were unable to resolve damages on their own.[3] Thus, I ordered briefing on the matter.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] After more than seven months of damages discussions, the parties reached an impasse, and Petitioner "propose[d] submitting a briefing of the damages." Status Report, filed Nov. 27, 2022, ECF No. 34.

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount **$145,000.00 for actual pain and suffering, plus an agreed-upon sum for unreimbursed expenses.**

I.  **Legal Standard**

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of*

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

*Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by a decision of the Court of Federal Claims several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). *Graves* instead emphasized the importance of assessing pain and suffering by looking to the record evidence specific to the injured individual, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. Although *Graves* is not controlling of the outcome in this case, it provides reasoned guidance in calculating pain and suffering awards.

## II.   The Parties' Arguments

The parties agree Petitioner should be awarded $4,856.16 for past and future unreimbursed expenses.[5] Thus, the only area of disagreement is the amount to be awarded for Petitioner's pain and suffering. Petitioner seeks $155,000.00 for past pain and suffering. Brief at 15; Reply at 8. In contrast, Respondent argues for an award of only $125,000.00. Opp. at 1, 11.

To support the amount he seeks, Petitioner emphasizes the gaping chin laceration and multiple fractures suffered to his face and jaw (ten in total); the need for immediate surgery - requiring a wired jaw for 26 days thereafter, arch bars and rubber bands for an additional two weeks, and an inability to eat solid food for 47 days; and the impact of these facial injuries on his appearance. Describing the adverse effects of his treatment such as the inability to properly brush his teeth (*id.* at 9), Petitioner characterizes his recovery as "brutal, slow, and painful" (*id.* at 8).

Regarding the duration of his injuries, Petitioner's fractures were healing well less than two months post-vaccination. Brief at 5. However, he then began treatment of four fractured teeth – including a filing and crown replacement in January 2019, approximately five months post-vaccination. Brief at 5, 9. Petitioner maintains that he suffered the residual effects of his syncope injury as late as June 2020, when he was forced to undergo

---

[5] This amount includes a portion for future unreimbursed expenses which has been reduced to net present value as required under the Act. Petitioner's Damages Brief ("Brief"), filed Dec. 14, 2022, at 6 n.1, ECF No. 36; Respondent's Brief on Damages ("Opp."), filed Dec. 14, 2022, at 1, 11, ECF No. 35; Petitioner's Reply in Further Support of Damages ("Reply"), filed Dec. 30, 2022, at 8, ECF No. 37; *see* Section 15(f)(4)(A).

a root canal. *Id.* at 9-10. He insists Respondent's agreement to unreimbursed expenses, which include an amount for future orthodontic work, constitutes an acknowledgement of the ongoing nature of his vaccine-related injury. *Id.* at 10.

Petitioner compares his case favorably with *Hietpas*,[6] in which a pain and suffering award of $140,000.00 was issued. Brief at 13-14. Suffering a chin laceration and fractures to her mandible,[7] the *Hietpas* petitioner also required immediate surgery. Brief at 13. Due to continuing jaw pain, she was forced to wear "an orthopedic cast, which is a removable mouthpiece used to reposition the mandible" for eighteen hours a day for a year. *Id.* Despite this longer time needed for the healing and repositioning of the *Hietpas* petitioner's jaw, Petitioner maintains that his injuries and surgery were more severe - involving three mandible and seven facial fractures, as well as the wiring of his jaw during recovery. *Id.* at 14. Thus, he argues that his award should be greater. *Id.* at 14-15.

Respondent counters that Petitioner should be awarded less than the *Hietpas* petitioner. Opp. at 8. Treatment in this case"[wa]s confined to the immediate month or two after vaccination and surgery" (*id.* at 9), while the *Hietpas* petitioner's injury occurred over a longer time period – involving pain, cracking, and popping in her right jaw lasting a year post-vaccination (*id.* at 8). He argues that a connection between Petitioner's later dental work and his syncopal injury is tenuous. *Id.*

Respondent cites four additional cases involving syncopal injuries (*Edwards, Neff, Xanthopolous,* and, *Stack*) and where awards ranging from $100,000.00 to $175,000.00 were issued.[8] Opp. at 10-11. He acknowledges, however, that these cases offer little guidance as they involved agreed-upon amounts determined through proffer or stipulation. *Id.* Although he discusses one case involving a substantive damages decision, *H.S.* (involving a pain and suffering award of $60,000.00 for a syncopal injury featuring

---

[6] *Hietpas v. Sec'y of Health & Hum. Servs.,* No. 19-1702V, 2021 WL 688620 (Fed. Cl. Spec. Mstr. Jan. 5, 2021) (awarding a total award of $155,544.26 which included $140,000.00 for pain and suffering).

[7] The mandible is "the horseshoe-shaped bone forming the lower jaw." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY ("DORLAND'S") at 1101 (32th ed. 2012).

[8] *Edwards v. Sec'y of Health & Hum. Servs.,* No. 18-0138V, 2019 WL 7597444 (Fed. Cl. Spec. Mstr. Dec. 13, 2019) (awarding $100,000.00 for pain and suffering from a syncopal injury resulting in a fractured jaw and teeth, ruptured eardrum, and chin laceration pursuant to a proffer); *Neff v. Sec'y of Health & Hum. Servs.,* No. 08-0906V, 2010 WL 2710646 (Fed. Cl. Spec. Mstr. June 15, 2020) (awarding $110,000.00 for a syncopal injury resulting in concussion, intracranial hemorrhage, and ongoing loss of smell pursuant to a stipulation); *Stark v. Sec'y of Health & Hum. Servs.,* No. 13-0115V, 2014 WL 346450 (Fed. Cl. Spec. Mstr. Jan. 6, 2014) (awarding $175,000.00 for a syncopal injury resulting in severe head trauma, right subdural hematoma, a non-depressed skull fracture, seizure disorder, post-traumatic cognitive and physical impairments, headaches, fatigue, and dizziness pursuant to a stipulation). One cited case: *Xanthopolous,* No. 14-1101V, issued Aug. 21, 2015 (awarding $112,500.00 for a syncopal injury resulting in a traumatic brain injury), can be found at https://www.govinfo.gov/app/collection/uscourts/national/cofc (last visited Aug. 2, 2023).

head trauma, a concussion, and skull and C-1 vertebra fractures), Respondent appears to acknowledge the lack of similarity between present circumstances and that case. *Id.* at 7; *see H.S. v. Sec'y of Health & Hum. Servs.,* No. 14-1057V, 2015 WL 6155891 (Fed. Cl. Spec. Mstr. Sept. 25, 2015). Other than a brief mention, he provides no further discussion or comparison of Petitioner's circumstances with those experienced by the *H.S.* petitioner.

In his reply, Petitioner reiterates the assertion that his pain and suffering exceeded that of the *Hietpas* petitioner. Reply at 1. Criticizing Respondent's emphasis on the duration of the *Hietpas* petitioner's symptoms, Petitioner argues that "the longer duration is balanced by the severity of [his] injury and the intensity of his treatment, which Respondent entirely ignores." *Id.* at 2. And he characterizes Respondent's assertion that not all the dental work Petitioner required should be linked to his syncopal injury as "a collateral attack on entitlement" – belatedly raised since entitlement was already conceded. *Id.* at 3-4. Finally, Petitioner condemns Respondent's reliance on stipulated and proffered cases, and a damages continuum which he maintains runs counter to the holding in *Graves. Id.* at 5-7 (quoting my discussion of the *Graves* holding in *Smallwood v. Sec'y of Health & Hum. Servs.,* No. 18-0291V, 2020 WL 2954958, at *13 (Fed. Cl. Spec. Mstr. Apr. 29, 2020)); *see also Graves,* 109 Fed. Cl. at 590.

### III.     Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing the analysis in this case, I review the record as a whole to include the medical records, declarations, affidavits, and all other filed evidence, plus the parties' briefs and other pleadings. I consider prior awards for pain and suffering in previous syncope cases and rely upon my experience adjudicating these cases.[9] However, I base

---

[9] Since its inception on July 1, 2014, 30 cases involving syncope injuries have been resolved in SPU: 23 by proffered amounts, 3 by stipulated amounts, and 4 by reasoned decisions. Statistical data for all cases resolved by proffered amounts reveals the median amount awarded to be $85,612.28, with two cases involving annuities. The awards in these cases have typically ranged from $59,362.91 to $101,383.66, representing cases between the first and third quartiles and awards comprised of all categories of compensation.

The proffered amounts awarded in the most common type of syncope case, involving injuries to the face, jaw, and teeth, are slightly higher - with a median amount of $92,990.16. Most other syncope cases involve concussions and ongoing symptoms related to hearing and balance. The awards in these cases are slightly lower - with a median of $75,557.58 for proffered amounts.

Three of the four cases requiring reasoned decisions involved the largest amounts awarded in syncope cases: $155,544.26 in *Hietpas*; $190,000.00 in *Campbell*; and $286,311.91 in *Marcillo. Hietpas v.*

5

my determination on the circumstances of this case.

Mr. Pozil (then a 25-year-old student at the University of North Carolina) suffered a syncopal episode after receiving the Tdap vaccine at a Target store on September 8, 2018. Found on the sidewalk outside the store bleeding from his mouth and chin, Petitioner suffered a laceration on his chin, a loose tooth, laceration between two teeth, and multiple facial and mandible fractures, but no brain or cervical injuries. Exhibit 2 at 3; Exhibit 3 at 22-23. Pictures taken at the emergency room show obvious damage to Petitioner's mouth and jaw, and Petitioner was administered Percocet for his pain. Exhibit 3 at 23-24, 29-30 (results of imaging). Because there was no oral surgeon on call, Petitioner was transferred to another facility. *Id.* at 30.

During surgery, Petitioner's mouth and teeth were correctly positioned and fractures of the palate and mandible were repaired using arch bars, plates and screws, and wiring. Exhibit 3 at 41-45. The next day, he was released from the hospital with instructions to avoid strenuous activity, to maintain a full liquid diet, and to carry wire cutters in case he needed to cut the wires to vomit. *Id.* at 200.

By late October 2018 (almost two months post-vaccination), Petitioner's fractures were healing well with "fairly good range of motion" (Exhibit 11 at 37-38), and his wiring had been removed earlier that month (*id.* at 24). However, he experienced "discomfort at the right angle of the mandible [and his] [t]ooth alignment fe[lt] slightly off." *Id.* at 37. He was instructed to "begin chewing and gradually advance [his] diet . . . [and] scheduled for arch bar removal under sedation in two weeks." *Id.* at 38.

In January 2019, Petitioner visited a dentist for restorative dental work on four fractured teeth, which included bonding of the teeth and a full crown replacement. Exhibit 5 at 2-3. Over a year later, in April 2020, he returned to the dentist complaining of severe pain. Exhibit 7 at 4. He was diagnosed with necrotic pulp and symptomatic apical periodontitis of tooth 14 and referred for a root canal and crown. *Id.* at 17. He underwent this treatment in June 2020. Exhibit 8 at 7.

I agree that *Hietpas* constitutes a helpful comparison case, and the parties present credible arguments for how it should be applied herein. Petitioner's initial injury, surgery, and treatment for the first two-months post-vaccination were clearly more severe. *See Hietpas,* 2021 WL 688620, at *2. The pain and suffering caused by the wiring of

---

*Sec'y of Health & Hum. Servs.,* No. 19-1702V, 2021 WL 688620 (Fed. Cl. Spec. Mstr. Jan. 5, 2021); *Campbell v. Sec'y of Health & Hum. Servs.,* No. 20-0381V, 2023 WL 1512589 (Fed. Cl. Spec. Mstr. Jan. 4, 2023); *Marcillo v. Sec'y of Health & Hum. Servs.,* No. 20-2061V, 2023 WL 3452274 (Fed. Cl. Spec. Mstr. Apr. 14, 2023). The fourth case involved an award of $60,000.00 in a case involving a concussion. *H.S. v. Sec'y of Health & Hum. Servs.,* No. 14-1057V, 2015 WL 6155891 (Fed. Cl. Spec. Mstr. Sept. 25, 2015).

Petitioner's jaw for 26 days and inability to eat solid food for an additional three weeks cannot be overstated. However, the *Hietpas* petitioner *continued* to experience a misalignment of her jaw after initial treatment, which caused her pain, popping, and crackling in her jaw. *Id.* at *2-3. More than a year post-vaccination, she was fitted with an orthopedic cast which she was required to wear for 18 hours a day for a year to keep her jaw immobile. *Id.* at *3. Although Petitioner's additional dental work was not insignificant, it does not equate to the *Hietpas* petitioner's continued symptoms and treatment. Petitioner reported severe symptoms (pain) for less than two months in 2020, prior to his root canal in June 2020. Exhibits 7 at 4, 17; Exhibit 8 at 7.

I also find the *Marcillo* case – in which the maximum pain and suffering award ($250,000.00) allowed was issued - to be instructive.[10] *Marcillo,* 2023 WL 3452274, at *1, 7. The *Marcillo* petitioner also underwent surgery and required wiring of his jaw during recovery. *Id.* at *3. However, he experienced multiple complications thereafter - including a severe infection, and required two additional corrective surgeries. *Id.* at *4-5. More than two years post-vaccination, the *Marcillo* petitioner was still wearing braces. *Id.* at *6. *Marcillo* illustrates some of the difficulties and fears associated with such an extensive surgery and treatment – and helps underscore Petitioner's comparatively successful and quick recovery.

Thus, the amount of pain and suffering damages awarded in this case should more closely mirror what I awarded in *Hietpas* – but given the more severe initial injury and treatment, I will award slightly *more* than what the *Hietpas* petitioner received. **I find $145,000.00 represents an appropriate amount for Petitioner's past pain and suffering.**

## Conclusion

For all of the reasons discussed above, and based on consideration of the record as a whole, **I award Petitioner a lump sum payment of $<u>149,856.16</u>, representing $145,000.00 for actual pain and suffering and $4,856.16 for actual and projected[11] unreimbursable expenses, in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id.*

---

[10] The syncope injuries in the other two SPU cases involving reasoned damages decisions – *H.S.* and *Campbell*, are dissimilar to the injury in this case. *See Campbell,* 2023 WL 1512589 (involving a fall down some stairs and fracture of her leg); *H.S.,* 2015 WL 6155891 (involving fractures of the skull and C1 vertebra). Therefore, they do not warrant further discussion.

[11] Because a portion of this amount has been designated for Petitioner's projected unreimbursable expenses, it has been reduced to net present value pursuant to Section 15(f)(4)(A).

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[12]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.